We'll hear argument first this morning in Case 09-1476, the Borough of Duryea v. Guarnieri. Mr. Ortiz. Mr. Chief Justice, and may it please the Court, in asking this Court to cabin Connick v. Myers' public concern requirement, Respondent would constitutionalize under the Petition Clause large parts of the law of public employee discipline, and thereby grant to public  Two independent reasons, however, argue strongly for applying the public concern requirement to discipline claims brought both under the free speech and the Petition Clauses. First, the constitutional framework principles this Court has repeatedly identified in its public employment cases argue strongly for requiring it. And second, McDonald v. Smith's principle of parity argues strongly for creating no hierarchy between the free speech and Petition Clauses. When you agree that the Petition Clause is, is different and does have a separate content? Your Honor, we agree that the Petition Clause, that when the Petition Clause and the free speech clause cover the same activity, they apply it under, they cover it under McDonald in the same way. But the speech clause in, in the employment context has been interpreted to cover the content. Whether it, whether it applies or not depends upon the content, right? When part of that inquiry turns on the content. And you want the Petition Clause also to turn on the content? Part of the inquiry, yes, Your Honor, should turn on the content. But it seems to me you're either petitioning the government or you're not petitioning the government. Why, why shouldn't the line be, if you're petitioning the government as employer, is different from petitioning the government as, as ruler? Why shouldn't that be the line that we draw? Well, the. Which wouldn't necessarily break out the same way as whether it's a matter of private concern versus a matter of public concern. Your Honor, this, this, under the constitutional background principles this Court has developed, this Court should look at, looks at how close to the core a particular example of employee activity is, and then talks about how much of a burden that kind of activity poses to the efficient operation of work. But the core, the core of, of the Petition Clause is petitioning. The core, the core of the Free Speech Clause is political speech, of course, speech of public interest. But the core of the Petition Clause is quite different. It's, it's simply whether you're petitioning. Surely you, you, you could petition the government. Most of the petitions in the early years were regarding private matters. Isn't that right? That is right, Your Honor. Just as most examples of speech concern private matters, too. Yet that does not define the core of the Free Speech Clause. It's not an empirical inquiry. That depends upon the purpose of the clause. And as this Court stated very definitely in McDonald, the core, the Petition Clause, like the Free Speech Clause, was, was aimed at promoting democratic self-governments. Petitioning is a particular form of speech. It is speech directed to a particular audience, the government, some arm of government, some individual in government. And it is speech that has a particular purpose, asking for a change of some sort in government policy. That's true. And it seems to me the, the core is involved whenever you're asking for a change. And it seems to me that the, the key distinction, if there is one, is whether you're asking for a change in, by your employer in your employment conditions or a change by the government in some matters over which the government has control as, as sovereign. Well, Your Honor, in practice, that inquiry would not align much differently than the conic inquiry would. May, may well be. May well be. And in this particular case, designing a kind of threshold inquiry along those lines would actually advantage Petitioners. One difficulty in application, though, is that this Court has always identified the purpose of the conic threshold test as categoricalizing, in a way, the Pickering balancing inquiry. And if you had a threshold test that basically did not match, was a little oblique to the Pickering balancing inquiry, it would create much more work for the lower courts along the way.  Would they have to do both? Would they have to do both? They might. Well, Your Honor, if the Pickering balancing inquiry still aligns with the traditional framework that this Court has described in its employment cases, what I described, and this other inquiry, which you're suggesting, Justice Scalia, was somewhat oblique to it, then it might conceivably be necessary to do both. If you're proceeding with a claim under two separate provisions of the Constitution, it should not be surprising that you might have two different tests. Well, Your Honor, then that might argue for more reengineering of the rest of the enterprise as well, a step that this Court has not identified as appropriate. Why would it make a difference at what you call the balancing stage, whether the distinction is between public speech and private speech on the one hand, or government as employer and government as sovereign on the other? Why would there be any difference? Well, Your Honor, if at the first stage the Court is running an inquiry that is something different from Connick, that is not going to map on to traditional Pickering balancing, at least as this Court has described it at the second stage. Why not? Because, Your Honor, Pickering balancing has gone to things like how important that particular example of speech is, how close it is to the core of what the First Amendment protects, and then that is weighed against the kind of burden it would place on the government to have that activity protected. I think all you are saying is that one of the elements of Pickering balancing is the element of Petition Clause jurisprudence, as I suggested it might be applied. That is, in Pickering balancing, certainly you have to ask, was what the individual was asking for a change in employment conditions? That would be one of the questions. If so, it was a private matter, and then you go on to the rest of the balancing. But it seems to me you have to make that determination under Pickering balancing anyway. And once you make it, you have answered the Petition Clause question. Well, Your Honor, if this Court were to proceed down that road, Petitioners, I believe, would still end up victorious. This is a case, as I understand your approach, where the petition does concern purely employment matters. It is not a petition aimed at or directed at the government in its capacity as sovereign. So under that kind of analysis, if that is where the initial trigger, this case would have not been constitutionalized. Sotomayor, what kind of case, hypothetically, would qualify under your theory as a petitioning case to the sovereign? Would a claim of retaliation because of a termination based on race qualify? It would depend upon the particular claims involved or statements in the petition. If it were a statement that there was a policy involved, a petition against a policy in the government department involving race, that would certainly qualify. That would be like the Givens case under the Free Speech Clause, Your Honor. If, however, it were a one-off allegation that a particular, say, low-level governmental supervisor had engaged in a form of discriminatory activity. Sotomayor, doesn't that get to the merits of the case? You have to from you can't invite a question as to whether the sovereign is responsible until you litigate the issue. So what is the, addressing Justice Scalia's question to you, what would qualify as a petition to the employer as opposed to a petition to the sovereign and why? Your Honor, a petition to the employer about changing the hours of employment  Sotomayor, those are clear cases. I was asking the flip. The flip. A petition, a complaint to an employer about the employer's pervasive or apparently pervasive policies in violation of the law would certainly qualify as something to, a petition to the sovereign. Of course, you have to wrestle with the same problem if you apply the other test that you were proposing. For sure, Your Honor. Mainly whether it's a private matter or a matter of public concern. You confront the same difficulty, don't you? You certainly do, Your Honor. And presumably this Court would look at some of the same factors that would be involved there, the form, the content, and the context of the communication. All of those things are relevant. This Court has admitted that that inquiry is sometimes messy, that there are some of the many cases where the lines, the distinction is not clear, but it is, this Court has not hesitated to apply that test because of its importance to the public employment environment. Mr. Ortiz, you're not drawing any line, depending on the branch of government. In other words, executive, legislature, those are certainly branches of government to which one can petition, but access to court, you agree, comes within the petition clause. A lawsuit, pursuing a lawsuit is definitely a form of petitioning activity, Your Honor. Petitioners do not contest that. What about the – this, as I understand it, came up originally as an arbitration on the – wasn't it under the collective bargaining contract? Yes, Your Honor, that is the case. Would that count also, because it's a mechanism set up by a government employer? It would qualify under the original conception of what a petition is all about that was in this case. It is Petitioner's view that it would not qualify under the access to courts definition or conception of petition that Respondent has developed since the case was first before the district court. Under that, you would qualify. Scalia, if lawsuits are covered by the Petition Clause, why is it that in the innumerable cases this Court has had concerning what due process of law consists of, we've never mentioned what the Petition Clause requires? I mean, if the Petition Clause guarantees access to the courts, certainly there are some minimum requirements that it imposes as well. And I don't recall any of our cases dealing with lawsuits that mention the Petition Clause. That's rather extraordinary, if indeed it governs all lawsuits. Well, Your Honor, that might be explained by the fact that the Due Process Clause has been interpreted more robustly and supplies a certain floor of constitutional protection for lawsuits. And the Petition Clause, since it is directed at petitions generally, and in particular the framers, the evidence is had in mind, not petitions to the courts, but petitions to the legislature, it lawsuits the courts. Maybe that's all they had in mind, or petitions to the executive as well. What evidence do you have that it applied to lawsuits? The evidence is that developed by Professor Andrews. And the argument is a somewhat slender one, but goes as follows. At the time of the founding, Congress was the central sort of clearinghouse for petitions and handled both what we think of as the stereotypical paradigmatic petitions, pleas to Congress to sort of change the law, and also handled a lot of private bills. Over time, Congress handed over much of the responsibility for handling the things that came through private bills to the courts. And so to the extent, this is a Respondent's argument, that the courts handled, took over those things, the lawsuits are protected. I agree with you that that's slender. Thank you, Your Honor. But you are not challenging that, as I understand. No, Your Honor. It was at the end of district court, it was conceded that the grievance activity would be, was protected. However, Petitioners do contest quite sharply that under Respondent's new view of the Petition Clause, that the things of central importance are lawsuits and other communications that would be protected, perhaps be protected otherwise under the Access to Courts doctrine, that arbitration, the arbitration involved in this case, does not count and should not receive any kind of heightened protection. The problem, much of the problem here is the theory of what is a petition from Respondent's side has changed from the district court to this court. Mr. Ortiz, can I try a hypothetical on you? Suppose that there is a city employee, and unrelated to the fact that he is a city employee, the government takes some part of his property without just compensation, and he sues the government, and the government says, somebody says, his employer, his supervisor said, do you know what he's just done? He's just sued the city. I think we should fire him. And he brings a retaliation claim. Is that protected under the Petition Clause? Yes, Your Honor. It would be protected for two different reasons. First, that would be similar activity would be protected under the Free Speech Clause, so that would preserve the principle of parody. Secondly, what has he done that's protected under the Free Speech Clause? He's just brought a suit saying I'm entitled to just compensation. That seems to me, I mean, the reason I ask is because this seems to me a purely private matter, which would not get protection under your test. It's not employment related, or related to his particular job. And this Court has always drawn a distinction there. For example, in National Treasury Employees Union, this Court applied that kind of analysis. I see. So that goes back to Justice Scalia's difference test, which is it's not a matter of public concern versus private concern, but it's a matter of employment related versus not employment related. Is that correct? Well, that shows how closely those two things have been related in this Court's approach. In — but certainly something that is private related, some public — if a public employee is complaining about tax assessment or something like that and tries to sue retaliation under that theory, not for anything related to his or her job, this Court, under this Court's and the lower court's application of the conic principles, there would be no problem there treating it as speech or as a petition. So it is only when the lawsuit or the petition involves something related to the person's employment that these particular — this particular test would kick in. And that's consistent, Your Honor, with this Court's twin background constitutional framework principles, one that you look at how much disruption something is likely to pose to the workforce and how central it is to the particular constitutional provision involved. In this case, if in general, if it's not employment related, the government has much less interest in worrying over it this way, and applying the conic threshold test is much less justified, you would have to do Pickering balancing, proceed directly to Pickering balancing in that case. Now, Your Honor, Respondent's view has — presents several problems as sort of practical application it would to this Court. First, it would allow for the easy circumvention of conic, which is a test that in the free speech side this Court has long held as very important for the public employment field to work efficiently. It would be very easy for a particular employee to take activity that conic would not allow to proceed, turn into a lawsuit on the free speech clause, and just by rephrasing it, re-spinning it, whatever, to turn it into a petition, where under Respondent's rule the result would be very different. It would also require the Court to create a hierarchy between speech claims and petition claims, and more importantly, if the Court were to go down the particular road that Respondent describes and see the center of the petition clause as defined by the access to courts doctrine, it would create a hierarchy among different forms of petitions. All of a sudden, petitions that at the founding were thought to be at the periphery, if there, of the petition clause would define its center, and a paradigmatic petition of a letter to Congress asking it to change its position on something would not be covered at all. If there are no further questions, I would like to retain my remaining time for rebuttal. Thank you, Mr. Ortiz. Mr. Palmore. Mr. Chief Justice, and may it please the Court. The Third Circuit rule here at issue is flawed for two fundamental reasons. First, contrary to this Court's admonitions, it quite literally constitutionalizes the employee grievance process by supplanting carefully calibrated nonconstitutional safeguards and by providing a potential First Amendment claim in Federal court to any employee who's filed a grievance on a matter of only private interest. And second of your argument is premised on the fact that there was an alternative mechanism to the court system available, meaning let's assume there wasn't a collective bargaining agreement, let's assume there wasn't a State law protection. All of the items that you mention in your brief as existing to resolve disputes, that the only avenue for redress were the courts. So where would that put your argument? Well, that's a hard hypothetical to answer, of course, because the grievance was filed pursuant to the collective bargaining agreement. Putting it aside, you were talking about constitutionalizing a grievance process. I'm going more broadly in saying how much of your argument depends on that fact. Well, I think that's an important part of the argument. It is harder if all they have access to is a court proceeding. I think that's an important part of the argument for this reason. If you look at the Third Circuit's case in San Filippo, the court had a kind of a doctrinal basis for its ruling, but it also had a practical concern that not affording protection for this kind of petitioning activity would be a trap for the unwary. But there was really no basis for that concern, because the issue here is when a sovereign provides a remedial mechanism or enters into a collective bargaining agreement that provides a remedial mechanism. Sotomayor, it typically, well. Sotomayor, how about if they don't? That's my point. Then what happens to the Third Circuit's definition? Well, then I think the result is the same, and our position is you still apply conic, just as speech on matters of private concern is protected by the First Amendment, yet under conic, an employee who engages in speech on a matter of private concern is not going to be protected in the employment context in all respects. And that reflects a very important balance that this Court has struck between its view of how the Constitution applies to the government as sovereign regulator of the general public and how it applies to the government and its proprietary status as an employer. And in that latter situation, conic has been critical in providing a bulwark against allowing run-of-the-mill employment disputes from becoming constitutional cases in Federal court. And the second main problem with the Third Circuit's approach, and it's one that Mr. Ortiz highlighted, is that it privileges petition activity over speech activity, contrary to this Court's numerous statements that there is no such hierarchy in the First Amendment. So going back to Thomas v. Collins in 1945, the Court called the two rights inseparable. In the United Mine Workers case, which is a case relied on by the other side, it's an access to courts case, the Court interchangeably applied the speech right, the petition right, and the assembly right, and it said that they were intimately connected in origin and purpose. And of course the State legislature passes a law depriving all State employees of collective bargaining rights. And a State employee files a lawsuit saying that this law violates the State constitution, and the State employee is thereupon fired. Is that a matter of public concern or not? It likely would be. And I think this goes to some of the questions Justice Scalia was asking. Because this Court said in conic that the question about whether speech is on a matter of public concern is assessed not only by the content, but by the form and the context. So in the case that Your Honor is positing, the content of the speech, which was that an act of the legislature was illegal, would suggest that it was on a matter of public concern. The form, the form of a lawsuit, is relevant to the consideration, and the context that it came in part of a larger political debate would likely be relevant, too. The problem with the Third Circuit approach is that it never engages in that kind of inquiry. And suppose now going back to Justice Sotomayor's example, suppose that there were a class action alleging systemic discrimination in some governmental workplace. Would that be a matter of public concern? It very well might be. That's similar to this Court's decision in the Givon case. So that was a case where a teacher went to complain to her principal about the school's general policy of discrimination, and this Court held that that was speech on a matter of public concern, that it affected more than just that individual employee's employment status. So many of these hypotheticals and many submissions and petitions to the government as sovereign will, in fact, satisfy the public concern test, and then you'll get into Pickering balance. Kennedy, can you think of any instance where speech by the employee would not be protected under the Pickering-Connick free speech calculus, but would be protected under the petition clause? I think that, no, if you put it in that way, this Court has never separately analyzed the two, but I think it is important to note that I think the Connick test already takes into account the distinction between what might be deemed petitioning conduct and non-petitioning conduct because of its use of the term form. So, again, the Connick test calls on courts to look at the content, the context, and the form. So if the form of an employee complaint takes the form of a lawsuit filed in Federal court, that's something that should be taken into account. Scalia, wouldn't a written letter to the employer, the government employer, similarly be a petition? Is a lawsuit any more of a petition, if indeed it is a petition at all, which I doubt? Surely filing a statement with the employer is a petition as well. So how does the form make any difference? I think it's a serious question about whether a letter submitted to an employer as an employer, not as a sovereign, is a petition. But that's the kind of line drawing that the Third Circuit approach requires. This Court has had a very broad conception of what counts as petitioning activity. So in Edwards v. South Carolina, the Court said that a march to the grounds of the State Capitol in South Carolina to protest segregation was an example of petitioning conduct in its most classic and pristine form. The Third Circuit doesn't count, wouldn't count that as a petition for this purpose. It has a kind of a gerrymandered view of what will count as a petition, basically a lawsuit and an employee grievance. Now, the approach followed by the majority of the circuits and the approach we advocate today doesn't require that kind of line drawing, because whether, for example, the grievance filed in this case is a petition or not, it's certainly speech. And so we would agree that it's susceptible to analysis under the normal Connick v. Myers framework. Ginsburg. Mr. Palmore, what about the distinction that the other side brings up, that Connick is about what happens inside the workplace? You don't want to disrupt the routine by the kind of activity in which Myers was involved. But the petition clause, we're talking about conduct outside the workplace. That is a complaint filed in court. Nothing is happening in the workplace. Well, I think it's workplace-related, and I think that's the test. So I don't think it — where, you know, where an employee physically was when he or she filed a petition isn't really relevant. The question is the connection to the workplace and the connection to the employer-employee relationship. So as Mr. Ortiz answered before, the NTEU case provides a separate set of protections under the First Amendment, under the speech protection, for employees who engage in conduct that has no connection to the workplace. And it would limit the ability of a government employer to take action against such an employee. But the conduct here is the grievances that were filed here were obviously intimately connected to the workplace relationship between Chief Guarnieri and the borough counsel. This was not a case like NTEU where someone wanted to go out and give a speech on something that had no connection to their job or go out and file a lawsuit or some kind of petitioning activity on something that had no connection to the workplace. Kagan. Well, Mr. Palmore, on that matter, one last hypothetical. Suppose the New York City Council passed a resolution that said a precinct house would be closed all night long from 7 p.m. to 7 a.m., and the chief of that precinct filed suit saying that this was micromanagement and it was going to affect the public safety of the citizenry, and then that chief of police was fired. Is that a matter of public concern? Palmore. It very well might be. It's hard to answer in the abstract, because what this Court has said is that the question has to be analyzed in light of the whole record and in light of the content, the context, and the form. It's not necessary for this Court in this case to decide whether the petitioning and speech activity here was on a matter of public or private concern. The question presented says that it was on a matter of private concern. So all the Court needs to decide is whether that makes a difference or not in terms of the constitutional analysis. And then the Third Circuit on remand could decide, assuming the arguments were preserved, could look at the whole record and decide whether the speech activity here was on a matter of public or private concern. If there are no further questions, we ask that judgment be reversed. Roberts. Thank you, counsel. Mr. Schnapper. Mr. Chief Justice, and may it please the Court, neither the text, history, or purpose of the petition clause nor the interest of a government employer in an efficient workplace provide a basis for distinguishing and giving less protection to a petition because it didn't involve a matter of public concern. The text of the petition clause certainly draws no such distinction. The subject of the petition must be a grievance, and a grievance, I think, is measured by whether the matter is of concern to the Petitioner. If it's a problem of concern to the Petitioner, that satisfies that constitutional element. It does not matter whether the public cares a lot, doesn't care at all. But all of our cases have equated the petition clause reach with that of the First Amendment, and our cases under the First Amendment have made clear that we don't want to constitutionalize the employee grievance procedures. With all respect, Mr. Chief Justice, I don't think this Court is committed to the view that the petition clause and the free speech clause cover exactly the same things. In fact, emphatically, obviously they don't, because the free speech clause covers many things that the petition clause would not. It covered, for example, the remark in the Roberts' case. Roberts I believe so, Your Honor. This Court's decisions in the antitrust area and under the National Labor Relations Act with regard to access to the government or the courts, they have always been framed solely in terms of the petition clause, not the free speech clause. It would be at least very awkward to characterize those problems as free speech cases, particularly where, as is typically the case, the underlying activity wasn't the part of, say, a lawyer rather than an individual who is asserting the petition right. Roberts Well, getting back to the second part of my question, in the First Amendment cases, we were concerned about, as I said, constitutionalizing employee grievances. If you constitutionalize it under the petition clause, how is that any less a problem of constitutionalizing it under the First Amendment? Gannon Well, it's our view, Mr. Chief Justice, that, and in this respect to some extent I think we agree with a statement made by Petitioners, that every gripe that an individual employee might have, indeed most of them, wouldn't be covered by the petition clause. In the Petition Reply Brief, Petitioners state, and we agree with this, that the ordinary routine e-mails give and take within the office, that's not covered by the Petition  Roberts Well, all you have to do, then, is add a sentence to your complaint saying this is an example of how the government employer mistreats its employees. Gannon No. Roberts Then it becomes more generalized? Gannon No, no, Your Honor. That's their view, that it becomes a matter of public concern if you say it affects a lot of people. Our view is that that's not relevant. It's a matter of public concern. No, Your Honor, saying that wouldn't have that effect. The case to which they refer is one in which an employee indicated, as indeed occurred, that he was going to file a lawsuit, and the employer retaliated in a peremptory fashion because of that. That's been the rule in the Third Circuit, has only come up twice. But if I might point out, that's the rule under any number of Federal statutes which protect filing a charge with the EEOC or filing a lawsuit. The lower courts have agreed that it's not. Kennedy Under the First Amendment speech clause, we have said that an employee's, public employee's right to speech can be regulated, can be confined, can be restricted beyond what the State could do for a non-employee. Are you saying that if the Petition Clause is involved, there is no right to restrict what the employee does? No, Your Honor. The government Then you have to offer a test, and you don't want the public concern test. So what's your test? The government's interest as an employer is part of the calculus if this issue arose under the Petition Clause, and under ordinary balancing, when we look at the nature  And that's the way the Court has administered the Petition Clause. And you would be content to apply that analytic, broad analytic framework to the Petition Clause? Yes, that's what the Court has done. Now, that said, I think there are circumstances where the government would hard-pressed to argue that it had a generalized interest in stopping a particular form of petitioning. For example, the Petitioners expressed a considerable unhappiness that they are subject to suit under Section 1983. It's expensive, it requires lawyers, they could have to pay counsel fees. Those are judgments that the Congress of the United States made in 1871 when it adopted Section 1983. It knew the government was, local governments would be subject to it. When the Congress strikes that balance, and, of course, Section 1983 is a very complicated piece of machinery, the balance Congress struck is ordinarily going to be controlling. Well, let's talk about it. I find it difficult to believe that lawsuits are covered by the Petition Clause when it is very clear that the Congress can prevent all lawsuits against the Federal government by simply refusing to waive sovereign immunity. Now, you know, how can you have a constitutional guarantee of the right to petition in the government, which you say includes the right to be in law court, and yet the Federal government can exempt itself from suits in law courts? The Federal government is not obligated to provide a lower court system for to authorize to hear suits against the Federal government. I'm not talking about just a lower court system. I'm talking about all suits, right up to the Supreme Court. The Federal government can say, you can't sue us. It can't. But it cannot set up a court system and then punish government employees for using it. They are not — if I might step back a couple hundred years here, the, the … Scalia You're saying that the Petition Clause only covers those petitions that the government chooses to allow. Is that what the constitutional guarantee is? If you choose to allow a certain kind of petition, it is constitutionally guaranteed. That's not much of a guarantee. No, I think, I think historically that's, that's a fairly accurate description of what has happened with the emergence of the Petition Clause over the last 600 or 700 years of Anglo-American history. There were no courts to which people could seek redress against the Crown at the time of Magna Carta. Over time, the courts became available to do that. Insofar as they did, on our view, the Petition Clause would now apply. And if I might turn to a question you asked earlier, you expressed some skepticism about whether the Petition Clause applies to lawsuits. I note that in at least half a dozen decisions, this Court has held that, and I, I think that would be the premise of your concurring opinion in the B, E, and K construction case a few years ago. And we don't in this regard have to get deeply into history in the debate about whether courts are covered. The text of the first, of the Petition Clause is sufficient on its face. It doesn't say petitions to the legislature. It says petitions to the government. And that was clearly a deliberate choice, because the State couldn't do it. Ginsburg. Ginsburg. But, Mr. Schnapper, you can write a letter to the President, you can write a letter to your congressional representative, but to get into a court, you have to pay a filing fee. And since this would be a civil case, this Court has held if you haven't got whatever is the filing fee amount, too bad, you don't have access to the court. Schnapper. Yes, Your Honor, and I think those cases are clearly distinguishable. The core historical purpose of concern of the Petition Clause was reprisals by the government against people for, for petitioning the government. There is a fundamental difference here between what's at stake here, where the borough is inserting a right to punish people for going to court, and the question about whether the government has an affirmative obligation to remove the incidental barriers that may exist to bringing lawsuits. And so we think those cases are different. Are you suggesting that in one of these suits you wouldn't have to pay the filing fee? No, no, precisely to the contrary. We are asserting only that the government cannot punish Mr. Guarnieri for filing a lawsuit. We are not suggesting the government has to pay his filing fee, any more than if the government, if Mr. Guarnieri wants to go to Harrisburg and meet with his or her representative, the government, argued, can't punish him for doing that, but they don't have to give him gas money. And if he doesn't have enough money for gas, that's just too bad. Alito, suppose the borough here bought something from a company under a contract that included an arbitration clause. Would that, would the right of the company to engage in arbitration be protected by the Petition Clause? Yes. We believe the Petition Clause applies to government-created mechanisms for redressing grievances. And if the government sets up an arbitration procedure like that, we think that's covered. An arbitration agreement between two private parties would not be covered by the Petition Clause because the government wouldn't have been involved in setting that up. And that distinction really has its roots in history. The Petition started out back at the time of Magna Carta. Petitions only went to the King. Over time, the British government and ultimately the American government developed other mechanisms that were simply more efficient. So that, for example, at the time of the Petition Clause was written, Congress received a large number of petitions from wounded veterans. And after several years of dealing with that, it adopted the Invalid Pension Act and turned that over to a somewhat unusual combination of administrative and judicial officials.  Scalia, what is the English or American case you have that refers to a lawsuit as protected by the Petition Clause? I'm not familiar with English law in that respect. With regard to the decision of this Court, I think it's California Motor Transport, which I think is about 40 years ago. How many? About 40. Forty years ago. There's precious little data. A couple hundred years and nobody connected the two. Many of the constitutional issues this Court deals with were not raised for a very long period of time. In the Garcetti case, the district attorney was disciplined for sending the memo because he disagreed with how the trial strategy was supposed to unfold, and then he actually made that argument in court. He was disciplined for that. Would he have been protected if he had just gone to court to sue the office of the district attorney and some sort of a prospective injunction saying, with reference to all search warrants, you should follow the following procedures? That would have been protected, even though a memo was not? It would have been a petition. It would not necessarily have been protected. The government has an interest in such matters as employer, and that might indeed outweigh it. Kennedy And would you have objected if the same analysis were used in the Petition Clause case as in the actual case? Or would you just take the whole thing? Verrilli, Right. The question is, would the Garcetti principle? Kennedy Just white out a speech clause and put in Petition Clause and file the same opinion. Verrilli, The question I take that you're asking is whether the Garcetti principle would apply to a Petition Clause case where the government was part of the official's duty. Kennedy I want to know how the analytic framework differs. I don't think the specific question is whether the Garcetti rule should apply in a Petition Clause case. I don't think we have a position on that. I mean, it's not raised in this case. Kagan Mr. Schampert, can I ask Justice Kennedy's question maybe in a little bit of a different way? In the Connick inquiry, you have a threshold inquiry and then you have a balancing test. Now, you're suggesting that the threshold inquiry, the public concern inquiry, is kind of apples and oranges here. It's just not appropriate for the Petition Clause. But the question that then follows is there should be a replacement threshold inquiry before you get to the balancing that Connick suggests is the second stage of the process. Schampert Probably not in the sense that you are asking. There would be a threshold inquiry as to whether what had happened was petitioning. If it were, this Court's decisions indicate that the Court might impose a threshold inquiry consistent with, say, the line of cases most recently, B, E, and K construction, as to whether the underlying petition had a reasonable basis or was or had been pursued in good faith. But I think if you got past that, then there wouldn't be no further threshold inquiry. Alito What if a number of municipal employees prepare a formal document called Petition and they say we have a grievance and our grievance is that the quality of the food in the cafeteria is poor? Now, is that protected by the Petition Clause? Schampert As you describe it in our view, not so. Because our view is that, putting aside the historical and somewhat unusual, less common instance of a petition directed to, let's say, the Federal level, the Congress or the President, the Petition Clause ordinarily applies only where the government has created a specific remedial mechanism for addressing a particular kind of grievance and something that's just outside the ordinary give and take of the Federal level. Something like, you know, a separate agency or an arbitrator or a court, something like that. And that, there's a historical. Alito Where does that rule come from? It's just drawn out of thin air? Schampert No, it isn't. That's the, historically, that's the kind of distinction that was there. If you had a problem in England, if the undersheriff took your cow, you could go to the sheriff.  If you went to the king, that was a petition. It was not just going to the local. So we do have a great deal of historical material, as Justice Scalia points out, about individuals, including Federal government officials, petitioning Congress. And I think the Framers would have regarded those as petitions. I don't think they would have regarded a beef with the Secretary of the Treasury as a petition. We would call it, there's no question. Ginsburg's daughter, Myers, in Connick, was going around the office, collecting signatures. She was taking a poll. She was taking a poll, and the poll was going to be presented to the employer. That sounds much more petition-like than filing agreements pursuant to a collective bargaining agreement. So the distinction between Connick, who was taking a poll, why wasn't that a petition? Or maybe did she just put the wrong label on it? If she called her case a petition case, would it have been all right? No, Your Honor. Our view, as I indicated to Justice Alito, is that a gripe within the office, whether you label it a petition or not, would not, except in maybe some extraordinary circumstance, constitute a petition. But if I were my Respondent, I think your question raises a second important linguistic point, which is the word petition today has acquired a somewhat different meaning than it would have probably had in the 18th century. We think of petitions as the things you see out on tables along the street. People say, come along, sign my petition to do this, that, or the other thing. That was not a common phenomena in the 18th century. Petitions were ordinarily things from one individual or a couple of people. There were some exceptions, but that was not the normal practice. In fact, the very idea that you could have large numbers of people signing something called a petition was much controverted at that time. Kennedy, you're the expert in this area, but that surprises me. I thought it was quite common in the early 1800s for you to go to all your neighbors and the book quarreling about slavery explains this, where there were petitions signed by many of the constituents in the Congressmen's district. There were. It came to be used that way. That is largely a. Scores of signatures on these petitions. That's like your card table. It is, but what I'm suggesting is that that is a 19th and 20th century phenomena. You see very little of that in the 18th century or earlier. And I note, although I think that if that's done by private individuals and directed to the government, it would be protected by the Petition Clause, I note, just to give you a sense of the history, that at the time that happened, its legitimacy was challenged. And the argument was made by the proponents of slavery in support of the gag order adopted by Congress that this was not really a legitimate petition. The legitimate petition ought to be something about your personal problems. And abolitionists really had no business signing these things. It wasn't a personal grievance. Now, I think that's wrong. I think it's certainly not consistent with current case law. But it illustrates how the position advanced by Petitioners stands on its head, the historical evolution of the Petition Clause, which starts as about private matters. And only over time and after a great deal of struggle is it extended to things of broader concern and possibly petitions signed by people who don't have a personal grievance. Kennedy, that was the Calhoun position, not the John Q. Adams position. Right. Right. That's right. Ginsburg. Let's come to the century in which we are now living, and we have Title VII. Title VII has a provision, an explicit provision, against retaliation. But suppose it didn't. Suppose it just prohibited discrimination and it didn't have a retaliation clause. Is the thrust of your argument that a government employee would have a claim for retaliation, although someone in the private sector would not? Exactly. Exactly. And here we part company with, I think the government expressed a concern in its brief and perhaps a real argument, I guess it was the Petitioner that made this point, that there was something amiss about government employees having rights that private employees don't. That distinction exists because the Bill of Rights and the other constitutional guarantees, with the exception of the Thirteenth Amendment and the right to travel and interstate commerce, those rights don't apply to private to people dealing with private employers. But that's the basis of our law in this area, is that when the government is acting as an employer, the rights of the individuals are somewhat different, and they are closer to the rights that private employees have. So simply saying that these constitutional provisions apply against the government and, therefore, you don't have to worry about the distinction between private employers and government employers doesn't seem to be me to be completely responsive to our precedent. And we are not taking issue with the assertion of the government that the government as an employer has interests which are different than those it has just as a sovereign. But that distinction has nothing to do with the distinction they propose in this case between matters of public concern and matters of only private concern. Indeed, to the contrary, to the extent that the government's interests might be greater, surely a petition that deals with a matter of public importance is going to cause the government a lot more trouble than a purely private matter. A lawsuit or alleging systemic employment discrimination on the basis of religion, or even an individual. If Mr. Guarnieri had alleged and a court had found that he had been fired because he was Catholic, the ramifications politically and in terms of just the ramifications in terms of the workplace would have been far more serious. Kagan, Mr. Schnapper, isn't the real question in these cases whether the employee is acting as a citizen or, instead, whether the employee is acting as an employee? And in the speech cases, that distinction suggests a public concern threshold inquiry. Maybe in the petition cases it suggests something else, but that that's really the question we should be asking. Is this employee acting as an employee or as a citizen? Schnapper. With all due respect, our view is it depends whether or not the employee is acting as a petitioner within the meaning of the Petition Clause. The Petition Clause was not adopted, like the Free Speech Clause, to foster a vigorous public debate. The purpose of the Petition Clause, as this Court said in Christopher v. Harberry, is to enable an individual to seek relief for a wrong. And that has — that's not the same as the free speech interest that might exist to engage as a citizen in a robust public debate. Mr. Bonieri didn't file his complaint in Federal court, for example, looking to the Second Petition, in the hopes of a robust debate between himself and Judge Caputo. He filed that complaint to get redress for an alleged violation of his constitutional rights. So the citizen versus employee distinction in Connick is inept here. It's rooted in the purpose of the Free Speech Clause, which is protecting vigorous public debate on matters of public concern. The Petition Clause is not about matters of public concern. It's about people's ability to seek redress. It doesn't guarantee redress, but it protects their ability to ask for it. The State of the Union, I think, recognized that there would be large room to circumvent Connick if he could turn around and file a proceeding and say, now I have a petition, not just a grievance. Your Honor, we don't think that that is a serious problem, for three reasons. First of all, the Petitioners have, in highly expressive language, described the decision in Filippo as one which would lead to an avalanche, tsunami, an overwhelming number of new lawsuits. We pointed out in our reply brief that they had not adduced any evidence that any such thing had happened in the 17 years since San Filippo. Their reply brief does not purport to have any information to just support that. Roberts Well, but things will be a lot different if we give the sanction to your theory. I think the idea that it hasn't happened in 17 years in the wake of San Filippo is a little bit – it's not very compelling. Well, I think there are two other reasons why this is not a major concern. The first one is it simply isn't the case that you could take any brief, write Federal complaint at the top of it, and file it in Federal court and be protected. Most internal bribes don't raise a colorable claim under Federal or State law. And this Court's Petition Clause cases make it clear that a petition, particularly a lawsuit, that doesn't have a reasonable basis simply isn't going to be protected. It's also, to be frank, based on my contact with private practitioners, it's highly unrealistic to suggest that if an employee, a government employee, took some bribe and went to a lawyer and said, let's file this in Federal court, I want to get it off my chest, they can find a lawyer on a contingent fee basis. It's going to do that. If the case has no chance of success, you're not going to find a lawyer who will do it, and on a police officer's salary, you're certainly not going to be able to hire one. Third. Roberts. Well, but the most likely resolution when you have an employee grievance along with it is that some umbrella settlement. I mean, the employer doesn't want to spend. I mean, that's part of the reason our doctrine developed under the First Amendment. The employer doesn't want to have to worry about spending time and money in court to resolve what is essentially an employee grievance. Few private lawyers who aren't independently wealthy are going to take a baseless case on the theory that they're going to get some umbrella settlement. It just doesn't happen. And realistically, we don't really have a plausible account of why an employee would do this. I mean, you're an employee, you're unhappy with the way you're being treated at work. You just don't. Sotomayor, your client won everything in his collective bargaining grievance. He got his payback, he got them to stop doing what they did, and he found a lawyer to file a constitutional claim. So your suggestion that lawyers won't fight semi-chaotic adventures is unrealistic as well. People get upset about how they're treated all of the time, and they find lawyers to file suits about that treatment. You know, I can certainly tell you that people who are upset all the time call me incessantly unable to find lawyers. I mean, remember, the fact that Mr. Guarnieri was able to find a lawyer to take this case doesn't prove that people can find lawyers to take baseless cases. Mr. Guarnieri found a lawyer, she brought this case, she got past summary judgment, she took a trial and she won. This was a case that not only had a substantial basis, but on the facts, and this issue is no longer before us, she prevailed. The Court has no proof. Alito, that may be true of this case, but your submission is there are not very many – throughout the whole country, there are very few frivolous 1983 cases or employment cases. That's your point. They – certainly they happen. But the notion that this is going to unleash a flood of them seems to me unrealistic. Particularly in a situation like this where the theory of this is that the private employee, the government employee, reads Connick, realizes they can't write a letter to the boss with their gripe, and, dissatisfied with their ability to talk about it with friends and family and gripe with pals at the bar, decides the only way they can get it off their chest is to have it be in a complaint in some Federal courthouse where it would then probably be dismissed. I think in the real world, that's something that would make very little sense to an employee. If the Court has no further questions. Roberts. Thank you, counsel. Mr. Palmore, you have a minute left. Palmore. Your Honors, it defies the imagination that the radical Republicans and the Framers understood that the Petition Clause would constitutionalize the public employee grievance. And, as academic commentary that Respondent cites suggests, the Respondent's law-centered view of the Petition Clause would call into question the sovereign immunity doctrine, parts of Rule 11, suggest a right to appeal and a right to judicial review whenever anyone is aggrieved of government action. There is also a danger that it would constitutionalize the arbitration process whenever the government is a party. And finally, just to answer one question, Connick is focused not on where speech happens, as Respondent insists, but rather on where its effects occur. As this Court held in the city of San Diego v. Roe, employee speech completely outside of the workplace raises the same kind of concerns. If there are no further questions, Petitioners will rest on their submissions. Thank you. Thank you, counsel. The case is submitted.